**TRUSTEES OF the PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, et al., Plaintiffs,**

v.

**TRANSWORLD MECHANICAL, INC., et al., Defendants.**

No. 94 Civ. 6634 (DC).

United States District Court, S.D. New York.

May 25, 1995.

Cohen, Weiss and Simon by Joseph J. Vitale and Tamir W. Rosenblum, New York City, for plaintiffs.

Schlam Stone & Dolan by James C. Sherwood, New York City, for defendants.

## OPINION

CHIN, District Judge.

This is a case brought to collect contributions and other benefits allegedly owed to several employee benefit plans. Defendants Transworld Mechanical, Inc., Transworld Plumbing & Heating, Inc., Danica Plumbing & Heating Corp., Danica Mechanical, Inc., Thomas Andreadakis and Helen Andreadakis move 1) to stay this case pending the resolution of a related criminal matter in New York state court, 2) to stay this case pending the resolution of a related civil case in this Court, and 3) to dismiss certain claims. For the following reasons, the motion to stay this case until the resolution of the criminal mat-

1. For purposes of deciding defendants' motion to dismiss, I will accept as true the allegations contained in plaintiff's amended complaint. References to "Cmplt." are to the amended complaint.

2. Plaintiffs allege that Transworld Plumbing and Danica Mechanical are alter egos of the other

ter is granted; the motion to stay pending the civil case, however, is denied. The motion to dismiss is granted in part and denied in part.

## BACKGROUND [1]

Plaintiffs are the Trustees of several employee benefit funds for Local No. 2, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (the "Local 2 Funds") and of the Plumbers and Pipefitters National Pension Fund (collectively, the "Pension Fund"). The Trustees administer multi-employer employee benefit funds as defined by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(1) and (3). Local 2, a labor organization affiliated with the AFL–CIO, is also a plaintiff in this action.

Defendants are corporations engaged in the plumbing and pipefitting industry.[2] Plaintiffs allege that defendants Transworld Mechanical and Danica Plumbing are bound by a collective bargaining agreement with Local 2 that sets forth the terms and conditions for plumbing and gas fitting work performed by defendants' employees in Manhattan and the Bronx (the "Agreement"). The Agreement provides that defendants will remit contributions to the Funds for every hour worked by an employee. Plaintiffs allege that defendants, from 1988 to the present, failed to make adequate contributions for the hours worked by their employees, concealed the identity of the individuals employed by them, and misrepresented the hours worked by the employees who were listed. Defendants allegedly made these misrepresentations on reports made to the Industry Board and the Pension Fund. In addition, defendants allegedly failed to pay their employees the contractual wage rates as set forth in the Agreement and failed to make union assessment payments or promotion fund contributions.

corporate defendants and share common ownership, management, facilities, equipment, employees, etc. Plaintiffs also allege that the Andreadakises are the controlling officers of the corporate defendants. (Cmplt. ¶¶ 11–12, 18 and 21).

On or about October 15, 1993, the Andreadakises and the two Danica entities were indicted by the Grand Jury of the County of New York, *People of the State of New York v. Helen Andreadakis, et al.* The indictment charged that, among other things, defendants filed false reports to disguise violations of the Agreement, failed to make contributions to union pension funds, failed to pay union assessments, and concealed the employment of non-union workers who would otherwise be covered under the Agreement (the "Criminal Case"). The Criminal Case is scheduled to go to trial in late 1995.

Following the indictment, plaintiffs commenced this action (with an amended complaint filed on or about January 12, 1995), asserting violations of ERISA, the Labor Management Relations Act, 1947, 29 U.S.C. § 141 et seq., civil RICO, 18 U.S.C. § 1961 et seq., and common-law fraud. The wrongful conduct about which plaintiffs complain in this case is the same as in the Criminal Case.[3] Defendants move to stay this action pending resolution of the Criminal Case because, without a stay, they will be forced to choose between waiving their Fifth Amendment privilege and responding to discovery in the civil case, thereby risking self-incrimination, or invoking the privilege and facing a default in the civil case.

Defendants also move to stay this case pending the resolution of a related civil case that is currently before Judge Haight. That case, *Brenner v. Transworld Mechanical, Inc.*, 93 Civ. 2198 (CSH), which was commenced before the indictment was issued, is a delinquent contribution action brought by the Local 2 Funds against defendants Transworld Mechanical and Helen Andreadakis (the "*Brenner* case"). After the Local 2 Funds learned of the other defendants' roles

in the alleged fraud and embezzlement, it joined in the instant lawsuit. The *Brenner* case is currently on the suspense calendar, and counsel for plaintiffs has represented that Local 2 Funds is willing to discontinue it. (Pl.Mem. at 4).

Finally, defendants move to dismiss the RICO and fraud claims for failure to state a claim and failure to plead fraud with particularity.

## DISCUSSION

### I. Motion for Stay

It is well-settled that a court has the discretionary authority to stay a case if the interests of justice so require. *See United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970); *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) (citing *SEC v. Dresser Industries,* 628 F.2d 1368, 1375 (D.C.Cir.) (*en banc*), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)) (holding that although "the Constitution ... does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings ... a court may decide in its discretion to stay civil proceedings"); *Volmar Distributors, Inc. v. The New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y.1993).[4] Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case. *See In re Par Pharmaceutical, Inc.,* 133 F.R.D. 12, 13 (S.D.N.Y.1990) (citing *Dresser,* 628 F.2d at 1376); *Brock v. Tolkow,* 109 F.R.D. 116, 119 (E.D.N.Y.1985).

---

**3.** Pursuant to a request made by my law clerk, counsel for defendants advised this Court that Judge Fried had issued an opinion in the Criminal Case dismissing 25 counts. The remaining counts, however, contain allegations that are similar to those present in the civil case.

**4.** Plaintiffs assert that defendants' interests in not being forced to choose between asserting their Fifth Amendment rights or defending the civil action are insufficient to warrant a stay. Plaintiffs argue that it is not unconstitutional to force

a litigant to choose between invoking his Fifth Amendment rights and risking adverse consequences in a civil action, or engaging in discovery in the civil case and risking conviction. *See, e.g., Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *United States v. Rubinson,* 543 F.2d 951, 961 (2d Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976). Even if a court may constitutionally deny a request for a stay, however, a stay of a civil action may still be warranted in some instances.

A stay of the civil case, however, is an extraordinary remedy. *In re Par Pharmaceutical,* 133 F.R.D. at 13.

■ There are numerous factors that should be considered in determining whether a stay is warranted, including: 1) the extent to which the issues in the criminal case overlap with those presented in the civil case;[5] 2) the status of the case, including whether the defendants have been indicted;[6] 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.[7] Balancing these factors, I conclude that a stay is appropriate in this case as to Helen and Thomas Andreadakis so as not to interfere with their Fifth Amendment rights. To avoid duplication of discovery efforts, the case will also be stayed as to the corporate defendants until the Criminal Case is resolved with respect to the Andreadakises.

### A. *Stay as to Helen and Thomas Andreadakis*

#### 1. *Overlap of Issues*

■ The first question to be resolved is the extent to which the issues in the criminal case overlap with those present in the civil case, since self-incrimination is more likely if there is a significant overlap. *See Volmar Distributors, Inc.,* 152 F.R.D. at 39 (quoting *Parallel Proceedings,* 129 F.R.D. at 203) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."). If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay. *See Parallel Proceedings,* 129 F.R.D. at 203.

Reading the criminal indictment and the amended civil complaint together reveals that the wrongful conduct alleged in both cases is the same: defendants Helen and Thomas Andreadakis, through their companies, failed to make contributions to union pension funds, failed to pay union assessments, and concealed the employment of non-union employees, all in violation of the collective bargaining agreement between defendants and Local 2 and state and federal law. Indeed, plaintiffs concede that the indictment "obviously played a role in the Plaintiffs' decision to bring this action" since, according to the indictment, "the Funds have been defrauded out of thousands, if not millions, of dollars in fringe benefit contributions." (Pl.Mem. at 4). Accordingly, this factor weighs in favor of granting a stay.

#### 2. *The Status of the Criminal Case*

■ The second factor to be considered is the status of the criminal case. A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations. *See In re Par Pharmaceutical, Inc.,* 133 F.R.D. at 13 ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment") (citing cases); *Parallel Proceedings,* 129 F.R.D. at 203–04; *Volmar,* 152 F.R.D. at 39 (citing *Dresser,* 628 F.2d at 1375–76); *Brock,* 109 F.R.D. at 119. Accordingly, stays will generally not be granted before an indictment is issued. *See, e.g., Citibank v. Hakim,* 1993 WL 481335 (S.D.N.Y.1993) ("Although defendant Hakim allegedly is a target of a continuing grand jury investigation, he does not

---

**5.** *See Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201 (Pollack, J.) (hereafter, "Parallel Proceedings").

**6.** *See Volmar Distributors, Inc.,* 152 F.R.D. at 39; *In re Par Pharmaceutical, Inc.,* 133 F.R.D. at 13; *United States v. Certain Real Property,* 751 F.Supp. 1060 (E.D.N.Y.1989); *Parallel Proceedings,* 129 F.R.D. at 203.

**7.** *Volmar Distributors, Inc.,* 152 F.R.D. at 39 (citing *Arden Way Associates v. Boesky,* 660 F.Supp. 1494, 1497 (S.D.N.Y.1987)).

A fifth factor often cited by courts in this Circuit, the interests of persons not party to the civil litigation, is not applicable here and has not been raised by the parties.

claim to have been indicted. Accordingly, Hakim's pre-indictment motion to stay can be denied on this ground alone") (citations omitted); *Securities and Exchange Commission v. Musella,* 38 Fed.Rules Serv.2d 426 (S.D.N.Y.1983) (defendant's pre-indictment motion to stay civil case denied).

Here, Helen and Thomas Andreadakis, along with the two Danica entities, have been indicted. In addition, defendants' counsel has advised that the Criminal Case should be completed by the end of this year, which would not unreasonably prolong this case.[8] *See Twenty First Century Corp. v. LaBianca,* 801 F.Supp. 1007, 1010 (E.D.N.Y.1992) (motion for stay granted where civil case commenced in June 1992 and related criminal case was set for trial on November 30, 1992). Thus, this factor weighs in favor of granting a stay.

### 3. *The Private and Public Interests*

■ Examination of the various interests at stake here makes it clear that a stay is warranted in this case. First, the balance of the parties' divergent interests weighs in favor of a stay. Plaintiffs have a legitimate interest in the expeditious resolution of their case and their argument that they could face prejudice from a stay through loss of evidence is well-taken. These interests, however, are trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case. This is particularly true where the subject matter of both cases overlaps to a significant degree and the Criminal Case is expected to be resolved by the end of this year. In addition, the loss of evidence may not be as serious as plaintiffs believe since the resolution of the Criminal Case may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can

later be used in the civil action. *See Brock v. Tolkow,* 109 F.R.D. 116, 120 (E.D.N.Y.1985).

Judicial efficiency also weighs in favor of granting a stay. This is not an instance where criminal prosecution is merely conjectural; defendants have been indicted and will face trial within six months. *Cf. Citibank v. Hakim,* 1993 WL 481335, *2 (S.D.N.Y.1993) (pre-indictment motion for stay denied; the "convenience to the court weighs against a stay because it is unrealistic to postpone indefinitely the pending action until criminal charges are brought"). Thus, plaintiffs' concern that this Court will have to "rely upon fortuitous events to manage its dockets" is obviated.[9] In addition, resolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required in a criminal prosecution. *See Parallel Proceedings,* 129 F.R.D. at 204.

Finally, a stay of this case would not cause serious harm to any public interest. Plaintiffs argue that the public interests in obtaining "prompt and effective redress from a contractor who allegedly has been a player in an ongoing scheme which has affected" New York city residents and in maintaining the "financial security of employee benefit funds," would be advanced by the civil case. (Pl. Mem. at 14). While the public interests enunciated by plaintiffs' counsel have merit, this is not a case where a stay of the case will cause serious or immediate injury to those interests. Because of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here. *See Volmar,* 152 F.R.D. at 40. In addition, as discussed above, the case should not be delayed longer than approximately six months.

The inconvenience and delay to plaintiffs that will unfortunately be caused by a stay

---

8. In response to an inquiry by my law clerk, plaintiffs' counsel cautioned that the trial might not commence before late 1995 or early 1996.

9. Most of the cases cited by plaintiffs for its assertion that judicial efficiency would not be achieved by a stay are inapplicable since they either concern a pre-indictment motion for stay, a motion for stay after the defendant has pleaded guilty in the criminal case, thereby eliminating any Fifth Amendment concerns, or a civil case

involving different issues than those present in the criminal case. *See, e.g., United States v. Private Sanitation Industry Assoc.,* 811 F.Supp. 802 (S.D.N.Y.1992) (pre-indictment motion); *Arden Way Assoc. v. Boesky,* 660 F.Supp. 1494 (S.D.N.Y.1987) (motion for stay after guilty plea entered); *FDIC v. Renda,* 1987 U.S.Dist.LEXIS 8305 *13 (D.Kan.1987) (little overlap of issues between civil and criminal case).

are outweighed by the defendants' significant Fifth Amendment concerns, particularly where a stay will not inordinately prolong the civil case and where the criminal prosecution could provide some benefit to the civil case and advance public interests. Accordingly, the Andreadakises' motion for a stay is granted. Plaintiffs may move to vacate the stay, however, if the criminal prosecution does not proceed within the timetable presented by defense counsel or if other changes in circumstances warrant vacating the stay. *See id.; see also Certain Real Property,* 751 F.Supp. at 1063; *Brock,* 109 F.R.D. at 121.

**B. *Stay as to the Corporate Defendants***

■ Plaintiffs argue that even if a stay is entered against the individual defendants, the case should not be stayed against the corporate defendants because the corporate defendants do not have a Fifth Amendment privilege against self-incrimination. *See Dreier v. United States,* 221 U.S. 394, 399–400, 31 S.Ct. 550, 550, 55 L.Ed. 784 (1911); *In re Grand Jury Subpoenas Issued to Thirteen Corps.,* 775 F.2d 43, 46 (2d Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986). Plaintiffs also contend that the corporate defendants should not be permitted to hide behind the individual defendants' Fifth Amendment privilege. Defendants, on the other hand, contend that since the Andreadakises control the corporate defendants, the corporations cannot adequately defend themselves without the testimony of the individual defendants. Defendants further argue that judicial efficiency would be promoted by a stay as to the corporate defendants since discovery would not have to proceed in a piece-meal fashion but could proceed simultaneously against all defendants once the stay is lifted.

I do not have to resolve the issue of whether the corporate defendants would be prejudiced by the individual defendants' invocation of their Fifth Amendment rights since I find that it is more efficient to grant a complete stay as to all defendants rather than only a partial stay as to the individual ones. Plaintiffs themselves concede that the Andreadakises are the central figures in this case, as they are the "controlling officers of the corporate defendants and responsible for the correct reporting and payment of fringe benefits contributions and wages." Thus, because of the importance of their testimony, a partial stay could lead to duplicative discovery efforts. Plaintiffs might need to re-issue interrogatories or re-depose certain individuals in light of the testimony given by the Andreadakises.[10] Additionally, since the indictment against the Danica defendants is, as with the individual defendants, based on the same allegations as in the civil case, the evidence garnered in the criminal trial could reduce the scope of discovery in the civil case.[11] *See Volmar,* 152 F.R.D. at 41.

Furthermore, while a partial stay would permit plaintiffs to proceed with the civil case, even a partial stay would delay the case. To avoid duplication of effort and for judicial economy, this Court, in its discretion, grants the corporate defendants' motion to stay the civil case until the Criminal Case against the Andreadakises is resolved. Again, however, plaintiffs may move to vacate the stay if changes in circumstances so warrant.[12]

**10.** Indeed, plaintiffs state in their memorandum of law that "it may well be necessary to eventually depose the indicted defendant officers." (Pl. Mem. at 21). Plaintiffs also assert that "it is not at all clear at this stage how significant [the indicted defendants'] depositions will be to the lawsuit." This argument, however, is rejected as the Andreadakises, as controlling officers of the corporate defendants, are principal characters in this case and their testimony will undoubtedly be critical.

**11.** The fact that the other two defendants, Transworld Mechanical and Transworld Plumbing & Heating, Inc., were not indicted does not weigh against a stay since plaintiffs themselves allege that all four entities are "affiliated business enterprises and alter ego of each other." (Cmplt. ¶ 26). *See United States v. Certain Real Property,* 751 F.Supp. 1060, 1063 (E.D.N.Y.1989) (staying case for both defendants although only one had been indicted).

**12.** Defendants maintain that a stay is also warranted because there is an issue as to whether this Court or the National Labor Relations Board has jurisdiction over this case which can only be resolved after substantial discovery has been completed. Plaintiffs counter that a "potential question" as to jurisdiction does not form the basis for a stay. As I have granted the stay pending the resolution of the Criminal Case, I do not need to resolve this issue.

### C. *Stay Pending Brenner Case*

▉ Defendants move to stay this case pending the resolution of the *Brenner* case under the doctrine of the "prior pending action." (Def. Mem. at 13). That request is denied, in view of the fact that I have granted a stay pending the Criminal Case and also because the *Brenner* case is on the suspense calendar. I note that plaintiffs' counsel has represented that the Local 2 Funds is willing to discontinue the *Brenner* case. (Pl. Mem. at 4, 24). In the interest of judicial economy, it would make great sense for plaintiffs to discontinue the *Brenner* case.

## II. *Motion to Dismiss*

Defendants move to dismiss Counts IV, VII, and VIII, which are plaintiffs' claims for common law fraud, civil RICO, and ERISA fraud, respectively, for failure to state a claim and failure to plead fraud with particularity.

### A. *Standards for Motion to Dismiss*

In analyzing defendants' motion to dismiss under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, I must view the amended complaint in the light most favorable to plaintiffs and accept all allegations contained in the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994) (Rule 12(b)(6) motion); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989) (Rule 9(b) motion). Giving plaintiffs the benefit of the inferences in their favor, the complaint should not be dismissed unless it appears beyond a doubt that plaintiffs can prove no set of facts that would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Christ Gatzonis Electrical Contractor, Inc. v. New York City School Construction Authority,* 23 F.3d 636, 639 (2d Cir. 1994). With these standards in mind, I turn to defendants' motion to dismiss.

### B. *Counts IV and VIII—The Fraud Claims*

▉ Defendants assail plaintiffs for not pleading their common law and ERISA fraud claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and move to dismiss the fraud claims.[13] Specifically, defendants maintain that the fraud claims are deficient because they fail to provide such details as which defendant made which misrepresentation, or the date and time of the alleged misrepresentations.

▉ Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose behind the particularity requirement is to provide defendants with fair notice of plaintiffs' claims, protect defendants from harm to their reputation and reduce the number of strike suits. *See Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). To satisfy Rule 9(b), plaintiffs must specify the statements they claim were false or misleading and give particulars with respect to the fraudulent statements, including when and where the statements were made and the identity of those responsible for the statements. *Id.* at 11.

Rule 9(b)'s particularity requirement, however, must be read in concert with Rule 8 of the Federal Rules of Civil Procedure, which requires a short, plain statement of the facts upon which a claim is based. *See Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990) (citing *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987)). In addition, Rule 9's strictures are relaxed where the alleged fraud concerns facts "peculiarly within the opposing party's knowledge." *See DiVittorio,* 822 F.2d at 1247.

In their common-law fraud claim, plaintiffs allege that, in monthly reports due on the 20th of each month and submitted to plaintiffs, defendants misrepresented the identity of the employees working for them and the number of hours each employee worked.

---

**13.** Defendants also attack plaintiffs' RICO claim, to the extent that it is based on mail fraud, for failure to plead with particularity. This argument will be considered in the RICO section below.

Plaintiffs further allege that the Andreadakis defendants were responsible for the accuracy of the reports, that plaintiffs relied on the misrepresentations to their detriment, and that plaintiffs could not know the identity of the employees or the hours actually worked since they did not have access to defendants' records. (Cmplt. ¶¶ 37–41). With respect to their ERISA fraud claim, plaintiffs incorporate the allegations of their common-law fraud claim and also allege that the Andreadakises are controlling officers of the defendant corporations. (Cmplt. ¶¶ 57–62).

■ Plaintiffs have thus sufficiently pled their fraud claims with particularity: the amended complaint specifies the date, place (origin and destination) and content of the allegedly fraudulent statements. In addition, plaintiffs' fraud claims allege certain facts "peculiarly within the opposing party's knowledge" (namely, the identity of the persons employed by defendants and the hours worked), which justifies a relaxation of Rule 9's standards. Since greater particularity could not reasonably be expected without further discovery, the complaint should not be dismissed. *See Solomon v. Saril Apparel, Ltd.*, 1993 WL 404177 (S.D.N.Y.1993) (motion to dismiss ERISA claim based on delinquent contributions for failing to plead fraud with particularity denied since facts concerning the alleged failure to contribute were within defendants' knowledge and discovery would provide additional information about the fraud). Finally, considering the circumstances of the alleged fraud, plaintiffs' allegations give defendants sufficient notice of the claims to prepare a defense. *Id.* (citing *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990));

*see also Center Cadillac*, 808 F.Supp. at 229 (where the complaint sufficiently detailed the nature and mechanics of the fraudulent scheme, plaintiffs not required to plead the exact time, place and content of each mail communication).

Accordingly, defendants' motion to dismiss Counts IV and VIII is denied.

### C. Count VII—The RICO Claim

■ To prevail on their civil RICO claim, plaintiffs must establish that: 1) defendants 2) conducted or participated in the conduct of 3) an enterprise's affairs 4) through a pattern 5) of racketeering activity 6) that caused injury to plaintiffs' business or property. *See* 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir. 1992). In their amended complaint, plaintiffs allege that defendants together constituted an "enterprise affecting commerce" and that they committed a pattern of racketeering activity by causing fraudulent reports and other items to be sent through the mail in violation of 18 U.S.C. § 1341 and by embezzling or converting funds and assets belonging to plaintiffs in violation of 18 U.S.C. § 664, all in furtherance of the enterprise and in violation of 18 U.S.C. § 1962(c). (Cmplt. ¶¶ 52–53).[14]

Defendants move to dismiss this claim, arguing that plaintiffs have failed to allege: 1) a pattern of racketeering activity, 2) an enterprise, 3) mail fraud with particularity, and 4) injury to business or property. Because I conclude that plaintiffs have properly

---

**14.** Section 1962 provides in relevant part:
(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such an enterprise's affairs through a pattern of racketeering activity or the collection of unlawful debt.

18 U.S.C. § 1341 prohibits the use of the mails in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." The elements of a mail fraud violation are 1) a scheme to defraud someone of money or property and 2) use of the mails to further the scheme. *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir.1991).

18 U.S.C. § 664 prohibits the embezzlement or conversion of any funds or assets of any employee welfare benefit plan or employee pension benefit plan or any fund connected to either plan.

pled a RICO claim, defendants' motion is denied.

### 1. *Pattern of Racketeering Activity*

 To allege adequately a pattern of racketeering, plaintiffs must establish that defendants committed two or more predicate acts within ten years, which acts were related and continuous. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237–243, 109 S.Ct. 2893, 2899–2902, 106 L.Ed.2d 195 (1989); *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.1989), *cert. granted and judgment vacated*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *aff'd en banc*, 893 F.2d 1433 (2d Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). The relatedness requirement is the easier of the two to define: predicate acts are related if they share similar purposes, participants, victims, methods, or other distinguishing characteristics; in short, they must not be isolated or sporadic. *H.J. Inc.*, 492 U.S. at 239–41, 109 S.Ct. at 2901. Continuity, however, is a more fluid concept; it can be either open- or closed-ended in nature, *i.e.*, continuity can be shown either through a series of related predicate acts extending over a substantial period of time or by past conduct which by its nature extends into the future. *Id.* at 241–43, 109 S.Ct. at 2902.[15]

 Plaintiffs assert that they have established a pattern of racketeering activity sufficient to withstand the motion to dismiss. I agree. Plaintiffs have alleged that defendants, from at least 1988 to the present, mailed monthly reports to plaintiffs containing intentional misrepresentations regarding the number of persons employed by defendants and the number of hours worked by those employees, for the purpose of "reaping financial gain at the expense of Plaintiffs." (Cmplt. ¶ 52). In addition, plaintiffs alleged that defendants, again on a monthly basis from 1988 to the present, underreported the amount of monies owed to the employee benefit funds on the reports and retained the money themselves instead. (Cmplt. ¶ 53). Thus, the predicate acts of mail fraud and embezzlement/conversion were related: each of them had similar purposes (to defraud plaintiffs for defendants' own financial gain), participants, victims and methods. The acts were also continuous: they extended over a substantial period of time and most likely would have continued into the future if defendants had not been indicted. *See H.J. Inc.*, 492 U.S. at 249–51, 109 S.Ct. at 2906 (allegations that defendants made bribes over a six year period to members of a utility commission to approve unreasonably favorable rates for defendants stated a pattern of racketeering activity since the bribes had a common purpose and were frequent); *Koal Industries Corp. v. Asland, S.A.*, 808 F.Supp. 1143, 1161 (S.D.N.Y.1992) (pattern of racketeering activity sufficiently stated where defendants allegedly committed various acts of fraud over a period of two years that had a common purpose of defrauding plaintiffs of money and gaining control of a mine).

Plaintiffs have also alleged continuity by claiming that the Andreadakises set up "sham" corporations in an effort to defraud plaintiffs. These allegations plead continuity based on the predicate acts or offenses that are part of an ongoing entity's regular way of doing business. *See H.J. Inc.*, 492 U.S. at 241–43, 109 S.Ct. at 2902.

### 2. *Enterprise*

 The existence of an enterprise is an essential element of a RICO claim. *See* 18 U.S.C. § 1961(4). An enterprise may either be an ongoing organization or an association-in-fact of individuals or entities acting as a group for the common purpose of engaging in racketeering activity. *See Procter & Gamble v. Big Apple Industry Buildings, Inc.*, 879 F.2d 10, 15 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *Center Cadillac v. Bank*

---

15. The Supreme Court in *H.J. Inc.*, while recognizing that continuity would be analyzed on a case by case basis, nevertheless strove to give some guidance with respect to the concept of continuity, and stated that "continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes ... [or] where it is shown that the predicate acts are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902.

*Leumi Trust Co.,* 808 F.Supp. 213, 234 (S.D.N.Y.1992). To establish an association-in-fact enterprise, plaintiffs must show that the members of the enterprise function as a continuing unit and that the enterprise exists separate and apart from the racketeering activity in which it is allegedly engaged. *Center Cadillac,* 808 F.Supp. at 235 (citing *Procter & Gamble,* 879 F.2d at 15).

■ Plaintiffs allege that all of the defendants together constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962. Defendants maintain that this allegation does not plead a RICO enterprise with particularity. Defendants' argument is rejected since the pleading of a RICO enterprise need only meet the requirements of Rule 8 of the Federal Rules of Civil Procedure; that is, plaintiffs need only provide a clear and concise statement of the enterprise. *See Center Cadillac,* 808 F.Supp. at 235 (association enterprise sufficiently alleged where plaintiffs claimed individual defendants functioned as a unit with a banking entity to perpetrate fraud and extortion on plaintiffs); *Azurite Corp. Ltd. v. Amster & Co.,* 730 F.Supp. 571, 577 (S.D.N.Y.1990).

Furthermore, the amended complaint does state the structure of the enterprise: plaintiffs allege that the corporate defendants were employers of persons performing work covered under the collective bargaining agreement and controlled by the Andreadakis defendants, who had responsibility for the accuracy and mailing of the reports. (Cmplt. ¶¶ 7–12, 52–53). Plaintiffs further allege that two of the corporate defendants were sham companies created by the other defendants to defraud plaintiffs. (*See, e.g.,* Cmplt. ¶¶ 26, 32). Thus, keeping in mind that an enterprise need not be pled with particularity,

plaintiffs have sufficiently alleged the existence of a RICO enterprise.[16]

### 3. *Mail Fraud*

■ A RICO claim based on mail fraud must satisfy the particularity requirement of Rule 9(b). *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992). In addition, a RICO mail fraud claim must also identify the purpose of the mailing within the fraudulent scheme. *Id.*

■ As discussed above, I have already concluded that plaintiffs have pled fraud with sufficient particularity. Plaintiffs have also identified the purpose of defendants' mailings: to underreport the number of persons employed and the hours worked by defendants' employees so that defendants would pay fewer contributions and keep the additional money, which was owed to plaintiffs, for themselves. (Cmplt. ¶¶ 52 and 53).

The fact that plaintiffs do not specify which defendants made the fraudulent statements in the reports mailed to plaintiffs is more troubling. Defendants argue that plaintiffs do not tie any particular defendant to a specific act or omission. Keeping in mind, however, that the reason for the particularity requirement is to apprise each defendant of the facts surrounding the alleged fraud and that the complaint is to be read generously at this stage,[17] I conclude that the particularity requirement has been met given the circumstances of this case. The individual defendants are the owners and controlling officers of the corporate defendants which, plaintiffs allege, are the same entity and have responsibility for the accuracy of the reports. Thus, no specific connection between defendants and the fraudulent mailings is necessary. *See Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986) ("no specific connection be-

---

16. Defendants' reliance on *First Nationwide Bank v. Gelt Funding, Corp.,* 820 F.Supp. 89 (S.D.N.Y.1993), aff'd, 27 F.3d 763 (2d Cir.1994), is misplaced. The alleged enterprise in *First Nationwide* was simply the association of a mortgage broker and different borrowers who had engaged in a series of unrelated loan transactions. Not surprisingly, the district court held that plaintiff had not alleged an enterprise since he failed to specify the structure or personnel of the enterprise or how the various defendants came together as a group. *Id.* at 98.

Here, defendants are not unrelated entities, but are closely affiliated: plaintiffs have alleged that the individual defendants are the controlling officers of the corporate defendants and that the corporate defendants are alter egos of one another. Thus, plaintiffs have sufficiently alleged an enterprise.

17. *See Center Cadillac,* 808 F.Supp. at 230 (citation omitted).

tween fraudulent representations in the Offering Memorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question"). Plaintiffs have therefore sufficiently pled mail fraud with particularity.

### 4. *Injury to Business or Property*

■ Defendants' third attack on plaintiffs' RICO claim concerns plaintiffs' alleged injury to business or property.[18] Defendants maintain that, since plaintiffs request an audit or accounting as to the amount of contributions which were withheld, plaintiffs' alleged injuries are speculative.

■ Defendants are correct in asserting that a RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable. *See First Nationwide*, 27 F.3d at 768 (citing *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989)). Specific damages are required because the purpose of a civil RICO award is to return the plaintiff to the same financial position he would have enjoyed absent the illegal conduct. *See Bankers Trust Co.*, 859 F.2d at 1106.

Here, notwithstanding the fact that plaintiffs have not specified an exact dollar amount of damages, plaintiffs' allegations that defendants withheld contributions and other payments sufficiently state a RICO injury. This is not an instance where the RICO injury is mere conjecture because plaintiffs may ultimately recover their losses through alternate or independent means.[19] Rather, plaintiffs have alleged a non-speculative loss; they simply cannot ascertain the precise amount of that loss at this time because information is peculiarly within defendants' knowledge. The fact that plaintiffs have requested an audit and accounting does not render their losses speculative. *See Gregory v. American Guild of Musical Artists*, 1993 WL 179110 (S.D.N.Y.1993) (plaintiffs' allegations that they were induced to accept lower pension benefits than they could otherwise have obtained due to defendants' fraudulent concealment sufficiently stated a RICO injury). In addition, dismissing the RICO claim at this stage only to have plaintiffs move to reinstate the claim after the audit is completed does not promote judicial efficiency. Accordingly, the motion to dismiss the RICO claim is denied. Of course, defendants may move for summary judgment after the audit is completed if the audit shows that plaintiffs have not suffered any injury.

### CONCLUSION

Defendants' motion to stay this case until the resolution of the Criminal Case is granted. The motion to stay until the resolution of the *Brenner* case is denied. The motion to dismiss is denied.

SO ORDERED.

---

18. Section 1964(c) of RICO provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains ...

Thus, to have standing to bring a civil RICO claim, plaintiffs must show that defendants' violation of section 1962 caused an injury to their business or property. *See Sedima SPRL*, 473 U.S. 479, 105 S.Ct. 3275; *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir.1994) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990)).

19. *Cf. Bankers Trust*, 859 F.2d at 1105–06; *First Nationwide*, 27 F.3d at 768–69. The plaintiff in *Bankers Trust*, alleged that it was fraudulently induced by a bankrupt corporation's officers into accepting only 17.5% of its outstanding claim from the corporation. In dismissing the portion of the RICO claim seeking repayment of a lost debt, the appeals court held that the lost debt damages were too speculative to state a claim since the plaintiff's RICO injuries could be reduced or magnified depending on the outcome of the bankruptcy proceedings.

In *First Nationwide*, the plaintiff bank's RICO claim that borrowers fraudulently induced it to make nonrecourse loans was dismissed where the bank had not yet attempted to foreclose on the loans. The appeals court noted that any loss with respect to the loans could not be determined until the bank attempted foreclosure and "only when [the bank's] actual loss becomes clear and definite will the claims be ripe for suit". 27 F.3d at 768–69.