Ana Margarita **MARTINEZ**, Plaintiff,

v.

**JPMORGAN CHASE BANK, N.A.**, Defendant.

15 Civ. 6609 (VM)

United States District Court, S.D. New York.

Signed April 1, 2016

Filed April 4, 2016

Ramon Arturo Hernandez, Arturo V. Hernandez, P.A., Miami, FL, Rhonda Anderson, Rhonda A. Anderson, P.A., Coral Gables, FL, for Plaintiff.

Alicia Llosa Chang, James Loran Kerr, Craig Thomas Cagney, Michael S. Flynn, Davis Polk & Wardwell LLP, New York, NY, for Defendant.

### *DECISION AND ORDER*

VICTOR MARRERO, United States District Judge.

Plaintiff Ana Margarita Martinez ("Martinez") filed an Amended Complaint

("Amended Complaint," Dkt. No. 16) against defendant JPMorgan Chase, N.A. ("JPM Chase") as part of her continuing efforts to collect on a default judgment against the Republic of Cuba ("Cuba"). Martinez alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1961, in addition to state law claims of conversion, fraud, and fraudulent transfer. Martinez's claims are based on JPM Chase's alleged processing of prohibited commercial transactions involving Cuba or Cuban agencies or instrumentalities in violation of United States laws and regulations including the Export Administration Act of 1979, 50 U.S.C.App. 4605, and the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. Section 515.201.

JPM Chase filed a motion to dismiss the Amended Complaint ("Motion", Dkt. No. 22) for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Martinez filed opposition papers ("Opposition", Dkt. No. 26), and JPM Chase replied. ("Reply", Dkt. No. 27.) For the following reasons, Defendant JPM Chase's Motion is GRANTED.

## I. *BACKGROUND* [1]

### A. *MARTINEZ'S JUDGMENT AGAINST CUBA*

Martinez seeks to execute on a default judgment obtained in Florida state court in 2001 ("Florida Judgment") against Cuba pursuant to the Terrorism Risk Insurance Act ("TRIA"), 28 U.S.C. Section 1610 note, for compensatory damages of $12,197,102.60 plus post-judgment interest.[2] The Florida Judgment arose out of Martinez's civil suit against Cuba for torture and sexual battery committed against Martinez in the United States by her husband, a Cuban spy. Martinez sought recognition of the Florida Judgment by this Court on July 23, 2007, and a default judgment against Cuba was entered on December 7, 2007. (*See Martinez v. Republic of Cuba,* No. 07 Civ. 6607, Dkt. No. 16 (S.D.N.Y. Dec. 7, 2007).) On August 1, 2007, prior to the entry of the default judgment, the Court issued an Order of Attachment against JPM Chase prohibiting the transfer of any Cuban assets held by JPM Chase pending final judgment. JPM Chase responded to the Order of Attachment by letter stating that JPM Chase maintained "a number of accounts on its book that are blocked pursuant to the [CACR]." (Dkt. No. 16, Ex. B–2 at 4.) The letter also noted that one of those accounts—an AT & T account that held taxes due to Cuba (the "Cuban Tax Funds")—was the subject of two turnover proceedings pending in United States District Court.[3] The Order of Attachment expired on December 19, 2007.

Following the default judgment, Martinez caused the United States Marshal to serve, on March 14, 2008, a Writ of Execu-

---

1. The factual summary herein is drawn from the following documents: Martinez's Amended Complaint (Dkt. No. 16); JPM Chase's Memorandum of Law in Support of Defendant's Motion to Dismiss Amended Complaint (Dkt. No. 23); Martinez's Opposition (Dkt. No. 26); and JPM Chase's Reply (Dkt. No. 27). Except where specifically referenced, no further citations to these sources will be made.

2. Martinez's compensatory damages award was $7,175,000. Deducting payments previously made and adding pre-judgment interest at the Florida statutory rate brought the total judgment to $12,197,102.60. Martinez alleges that her award and post-judgment interest now totals $14.5 million. (Dkt. No. 16 at ¶ 43.)

3. *Anderson v. Republic of Cuba,* No. 07 Civ. 7974 (S.D.N.Y.) and *Hausler v. Republic of Cuba,* No. 07 Civ. 22375 (S.D.Fla.).

tion ("Writ") on JPM Chase to enable Martinez to enforce the judgment. The Writ was "strictly limited" to the Cuban Tax Funds. (Dkt. No. 16, Ex. D–1 at 3.) JPM Chase identified no other blocked accounts in response to the Writ. Martinez joined proceedings brought by other judgment creditors seeking turnover of the Cuban Tax Funds[4] but did not file any further petition for turnover or other enforcement proceedings. The Writ on the Cuban Tax Funds expired on February 13, 2009 and was not extended.

Martinez filed a complaint in this case on August 20, 2015 and later filed the Amended Complaint on November 23, 2015 to include allegations that JPM Chase participated in additional prohibited transactions of Cuban funds. (*See* Section I.B., *infra.*) Between the expiration of the Writ and the filing of the original complaint, Martinez did not further pursue execution against JPM Chase related to her judgment.

## B. *THE OFAC AND BNPP SETTLEMENT AGREEMENTS*

In 2011, JPM Chase entered into a settlement agreement with the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") to resolve pending allegations that JPM Chase processed prohibited transactions with Cuba ("OFAC Settlement"). The factual statement accompanying the OFAC Settlement stated that JPM Chase processed 1,711 electronic funds transfers totaling more than $178 million in violation of the CACR between December 12, 2005 and March 31, 2006. (Dkt. No. 16, Ex. E at 1.) OFAC did not allege that JPM Chase intentionally processed the transactions or knowingly concealed identifying information about Cuban entities to avoid having

those transactions blocked. JPM Chase agreed to pay a penalty of $88,300,000 under the OFAC Settlement.

In allegations that are new to the Amended Complaint, Martinez asserts that JPM Chase was also involved with a series of illegal transactions of Cuban funds through United States banks by BNP Paribas, S.A. ("BNP Paribas"). BNP Paribas, which is not a party to this case, reached a plea agreement in 2014 with the United States Attorney's Office for the Southern District of New York ("BNPP Plea Agreement"). BNP Paribas admitted to having processed thousands of U.S. dollar-denominated transactions with Cuban entities totaling more than $1.474 billion between 2000 and 2011, largely by removing identifying information from transactions involving Cuba to ensure they were not blocked. Under the BNPP Plea Agreement, BNP Paribas was assessed a penalty of $8.97 billion for processing transactions with Cuba and other nations subject to United States sanctions. Martinez asserts that JPM Chase, identified in the BNPP Plea Agreement as "U.S. Bank 1," received electronic funds transfers that had been scrubbed by BNP Paribas of identifying information connecting them to Cuba and converted the funds transfers into dollars.

## C. *MARTINEZ'S CLAIMS*

Martinez alleges that JPM Chase failed to block wire transfers and payments involving Cuba between December 2005 and March 2006 and colluded with BNP Paribas to wire transfers and funds involving Cuba between 2000 and 2010. As a result of JPM Chase's failure to block transactions with Cuban entities as required pursuant to the CACR, Martinez argues, she

---

4. *See Anderson,* 07 Civ. 7974, Dkt. No. 69 (S.D.N.Y. Jan. 26, 2009). That turnover petition was granted in 2009 and Martinez re-

ceived a share of the Cuban Tax Funds in partial satisfaction of her judgment.

was unable to satisfy the Florida Judgment.

Specifically, Martinez alleges that: 1) JPM Chase converted funds in which Martinez had a property interest pursuant to the Writ by failing to block and/or disclose the existence of Cuban assets; 2) JPM Chase committed fraud by concealing the existence of Cuban assets, preventing Martinez from collecting her Judgment; 3) JPM Chase participated in wire fraud as part of an "enterprise" within the meaning of RICO with BNP Paribas, Cuba, and sanctioned Cuban entities; 4) JPM Chase engaged in a "pattern of racketeering activity" within the definition of RICO by laundering Cuban funds that were the proceeds of unlawful activity; and 5) JPM Chase fraudulently transferred funds in which Martinez had an interest by failing to block the Cuban assets. Martinez seeks treble damages for her RICO claims in the amount of $43.5 million, as well as punitive damages of $58 million.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offer-*

*ing Sec. Litig.*, 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002).

## III. DISCUSSION

### A. STATE LAW CLAIMS

Martinez alleges state law claims of conversion, fraud, and fraudulent conveyance in her Amended Complaint. Claims of conversion are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(3). Claims of fraud and fraudulent conveyance are subject to a six-year statute of limitations. N.Y. C.P.L.R. § 213(8). All of Martinez's state law claims are time-barred, as Martinez expressly concedes in her Opposition. (Dkt. No. 26 at 19.) Martinez states in her Opposition that she intends to file a notice of voluntary dismissal of those claims. As of the date of this Decision and Order, the Court has received no such notice. Accordingly, based upon plaintiff's counsel's sworn statement that the claims alleged in Counts I, II and V are time-barred, the Court grants JPM Chase's motion to dismiss Martinez's claims of conversion, fraud, and fraudulent conveyance for failure to state a claim under Rule 12(b)(6).

### B. RICO CLAIMS

RICO broadly prohibits "any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To establish a RICO claim, a plaintiff must allege: 1) a violation of the RICO statute, 18 U.S.C. Section 1962; 2)

an injury to business or property; and 3) that the injury was caused by the defendant's RICO violation. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir.2008); *DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001).

This Court has previously observed that "the boundaries of RICO simply do not encompass the oversize capacity or elasticity to accommodate the many ill-fitting suits with which plaintiffs seek to outfit the statute." *Gross v. Waywell,* 628 F.Supp.2d 475, 482–83 (S.D.N.Y.2009); *see also Fitzgerald v. Chrysler Corp.,* 116 F.3d 225, 226 (7th Cir.1997) (noting that because RICO is "broadly worded in order to prevent loopholes from being drilled into it by ingenious lawyers, there is a danger of its being applied to situations absurdly remote from the concerns of the statute's framers.") This action is one such ill-fitting case, in which Martinez has set forth a "creative attempt to collect" on her default judgment by casting it as a RICO claim. *See Villoldo v. BNP Paribas S.A.,* No. 14 Civ. 9930, Dkt. No. 22 (S.D.N.Y. July 21, 2015).

In its Motion, JPM Chase argues that Martinez fails to state a claim under RICO because 1) she has not alleged any property interest in the unblocked Cuban funds that was injured by JPM Chase's actions; 2) she alleges no "enterprise" or predicate acts of racketeering activity on the part of JPM Chase that would serve as a basis for a RICO claim; and 3) she cannot establish causation between JPM Chase's alleged failure to block Cuban funds and her inability to satisfy the Florida Judgment. These pleading deficiencies are sufficient to defeat Martinez's RICO claims.

██ First, Martinez suffered no injury to a cognizable property interest. In order for Martinez to have suffered harm recognized under RICO, she must have had a formal legal interest in all or some Cuban funds transfers that were in the possession of JPM Chase between August 1, 2007 and December 19, 2007, when the Order of Attachment was in place, or between March 14, 2008 and February 13, 2009, when the Writ was in place. Under New York law, which governs post-judgment proceedings pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, a judgment creditor obtains a property interest by serving a writ on the garnishee and perfecting a judgment lien on the property. Any property that was transferred prior to the writ, however, is not subject to execution. *See* N.Y. C.P.L.R. § 5202(a) ("Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor's rights ... in an interest of the judgment debtor in personal property are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property, except (1) a transferee who acquired the debt or property for fair consideration before it was levied upon...."); N.Y. C.P.L.R. Section 5232(a).

Martinez argues that she maintained a property interest in any unblocked Cuban funds identified in the OFAC Settlement because those are funds from which she would have satisfied her judgment, had the funds been blocked. This argument assumes a backward-looking, speculative property interest that is not recognized under RICO. *See, e.g., First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir.1994) (RICO plaintiff lacked standing where "the actual amount of its injury was indefinite and unprovable"). The transactions identified in the OFAC Settlement concluded in March 2006. The Order of Attachment was not issued until August 2007, and the Writ was not issued until early 2008. Accordingly, Martinez had no property interest in the funds transfers until at least August 2007, well after the time period during which the

Cuban funds were in possession of JPM Chase.

█ Martinez attempts to cure this lapse in the timeline by relying on JPM Chase's knowing involvement in the BNPP transactions, which extended until 2010. These allegations are conclusory and contradicted by documents appended to the Amended Complaint, including the BNPP Plea Agreement itself. Aside from failing to sufficiently allege that JPM Chase was aware it transacted Cuban funds with BNP Paribas, the Amended Complaint fails to allege that Martinez suffered concrete, quantifiable losses cognizable under RICO. "A RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F.Supp.2d 486, 520 (S.D.N.Y.2007) *aff'd*, 328 Fed.Appx. 695 (2d Cir.2009) (*citing Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1146 (S.D.N.Y.1995)). It is a matter of speculation whether any of the funds transfers processed by JPM Chase would have been available for execution in satisfaction of Martinez's judgment, particularly since the Second Circuit has clarified that electronic funds transfers are attachable under TRIA only if they were transmitted directly from Cuba or a Cuban agency or instrumentality. *See Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 210 (2d Cir.2014) *cert. denied sub nom. Hausler v. JPMorgan Chase*

*Bank, N.A.*, —— U.S. ——, 136 S.Ct. 893, 193 L.Ed.2d 809 (2016); *Calderon–Cardona v. Bank of New York Mellon*, 770 F.3d 993, 995 (2d Cir.2014) *cert. denied*, —— U.S. ——, 136 S.Ct. 893, 193 L.Ed.2d 809 (2016). Martinez presents only conclusory assertions that all or some of the funds identified in the OFAC Settlement and BNPP Plea Agreement would have met this requirement.

Martinez's claim to unspecified unblocked funds can also be framed as an expectancy interest, injury to which RICO similarly does not recognize. *See Villoldo*, No. 14 Civ. 9930, Dkt. No. 22 at 5 (*citing McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir.2008)). The Court finds that Martinez has established no property interest in attachable blocked assets held by JPM Chase during the time period that the Order of Attachment and Writ were active; therefore, Martinez has not pled any injury to business or property sufficient to maintain a RICO claim.[5]

█ Second, Martinez makes out no "enterprise" in which JPM Chase participated through a pattern of racketeering activity. The existence of enterprise separate from the alleged pattern of racketeering activity is an essential element of a RICO claim. *See* 18 U.S.C. §§ 1962(a)-(c); *Boyle v. U.S.*, 556 U.S. 938, 947, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009); *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (finding

---

**5.** Additionally, Martinez never perfected her property interest by filing a turnover petition. Other Cuban judgment holders petitioned for and were granted turnover of funds blocked by JPM Chase. *See, e.g. Weininger v. Castro*, No. 05 Civ. 7214 (S.D.N.Y.); *Weininger v. JPMorgan Chase Bank, N.A.*, No. 05 Civ. 9314 (S.D.N.Y.); *Hausler v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 10289 (S.D.N.Y.); *Vera v. Republic of Cuba*, No. 12 Civ. 1596 (S.D.N.Y.). Martinez never filed a turnover proceeding to secure a court order under Section 5225(b), which outlines the "special proceeding" by

which a judgment creditor may seek turnover of funds from a third party holding property of a judgment debtor. N.Y. C.P.L.R. § 5225(b). A turnover proceeding ensures that the garnishee, judgment debtor, and any other interested parties are given notice and an opportunity to respond prior to judgment. Here, no such turnover petition was filed against JPM Chase, permitting subsequent judgment creditors to collect blocked funds held by JPM Chase that otherwise could have satisfied Martinez's judgment.

that a RICO enterprise is "an entity separate and apart from the pattern of activity in which it engages"). The existence of an enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524. Martinez cannot plausibly allege that JPM Chase, BNP Paribas, Cuba, and sanctioned Cuban entities functioned as an enterprise within the meaning of RICO. "The conclusory naming of a string of entities does not adequately allege an enterprise." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 175 (2d Cir.2004).

Nothing in the Amended Complaint or appended OFAC Settlement and BNPP Plea Agreement supports an inference that JPM Chase agreed with BNP Paribas, Cuba, or any Cuban entity to decline to block Cuban funds transfers. Martinez alleges that JPM Chase knowingly served as BNP Paribas's correspondent bank in order to process prohibited wire transfers involving Cuba. (Dkt. No. 16 at ¶ 16–26.) However, Martinez's assertions that JPM Chase intentionally processed Cuban funds identified in the BNPP Plea Agreement are conclusory and without a basis in the BNPP Plea Agreement itself. The BNPP Plea Agreement refers only to "U.S. Bank 1" and does not allege any intentional wrongdoing by that entity; in fact, the Statement of Facts states that BNPP directed dollar transactions to "U.S. Bank 1" "without informing U.S. Bank 1 that the transactions involved Cuban Sanctioned Entities." (Dkt. No. 16, Ex. F at ¶ 58.) A news article cited in the Amended Complaint identifies JPM Chase as "U.S. Bank 1," but, as the headline of that article ("JP Morgan Said to Have Unwittingly Helped BNPP's Transfers")[6] suggests, does not

support Martinez's theory that the transfers were intentional. Without sufficiently alleging knowledge, the Amended Complaint merely states that JPM Chase provided banking services to BNP Paribas or Cuban entities, which is insufficient to constitute a RICO enterprise. *See Rosner v. Bank of China,* 528 F.Supp.2d 419, 431 (S.D.N.Y.2007) (citing *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.),* 924 F.Supp. 449, 466 (S.D.N.Y.1996) ("Even the provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise")).

The Court is persuaded that there is no basis to support Martinez's conclusion that JPM Chase and other constituent entities were "associated together for the common purpose of engaging in a course of conduct," *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524, as required to make out an "enterprise" under the meaning of RICO.

■ Finally, Martinez has not alleged that JPM Chase's alleged RICO violations were the proximate cause of her inability to satisfy the remainder of the Florida Judgment. To invoke RICO's civil remedies, a plaintiff must have been "injured in his business or property by reason of a violation of Section 1962," 18 U.S.C. Section 1964(c). This statutory language has been construed to require a showing that the RICO violation at issue was a proximate cause of the plaintiff's injury. *See Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 456–61, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006) (discussing necessity of proximate cause requirement due to difficulty of ascertaining damages caused by remote action); *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1344 (2d Cir.1994);

**6.** Tom Schoenberg & Greg Farrell, *JPMorgan Said to Have Unwittingly Helped BNPP's Transfers,* Bloomberg News (July 4, 2014), http://www.bloomberg.com/news/articles/2014—07—03 /jpmorgan-said-to-have-unwittingly-helped-bnp-s-transfers.

*Chevron Corp. v. Donziger,* 974 F.Supp.2d 362, 601 (S.D.N.Y.2014).

Martinez claims that JPM Chase's failure to block Cuban funds caused her injury by diminishing her access to funds from which she could have satisfied the Florida Judgment. The Amended Complaint asserts that "had not JPM Chase perpetrated the racketeering scheme, funds would have been frozen by JPM Chase and OFAC, JPM Chase would have identified the funds in response to [Martinez]'s writs, and [Martinez] would have been able to collect on her judgment in 2007 and thereafter . . . ." (Dkt. No. 16 at ¶ 54.) Several intervening causes break the chain of causation between JPM Chase's alleged actions and Martinez's failure to satisfy her judgment—chiefly, Cuba's failure to pay the Florida Judgment in full. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the . . . violation led directly to the plaintiff's injuries." *Anza,* 547 U.S. at 461, 126 S.Ct. 1991. In *Villoldo,* the court rejected a similar effort by a judgment creditor of Cuba to collect by way of a RICO claim, finding in part that Cuba's failure to satisfy the default judgment against it constituted an intervening direct cause of injuries "which breaks the chain of proximate cause." *Villoldo,* No. 14 Civ. 9930, Dkt. No. 22 at 6. The Court agrees with the *Villoldo* court's reasoning and finds that Martinez has not satisfied her burden of proving that JPM Chase was the proximate cause of her alleged injury.

For the reasons stated above, Martinez's claims do not adequately plead any of the causes of action in the Amended Complaint and must be dismissed.

## IV.  ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion filed by defendant JPMorgan Chase (Dkt. No. 22) to dismiss the Amended Complaint of Plaintiff Ana Margarita Martinez (Dkt. No. 16) is **GRANTED** and the Clerk of Court is ordered to close the case.

**SO ORDERED.**