**VOLMAR DISTRIBUTORS, INC. and Interboro Distributors, Inc. d/b/a Media Masters Distributors, and Rez Associates, Inc., Plaintiffs,**

v.

**The NEW YORK POST CO., INC., Maxwell Newspapers, Inc., El Diario Associates, Pelham News Co. Inc., American Periodical Distributors, Inc., Vincent Orlando, Newspaper and Mail Deliverers Union of New York and Vicinity and Douglas La Chance, Defendants.**

**No. 92 Civ. 2875 (WCC).**

United States District Court,
S.D. New York.

Dec. 14, 1993.

Sylvor, Schneer, Gold & Morelli, New York City, for plaintiffs; Richard L. Gold, of counsel.

Proskauer Rose Goetz & Mendelsohn, New York City, for defendants Pelham News Co., Inc., American Periodical Distributors, Inc. and Vincent Orlando; Claire P. Gutekunst, of counsel.

Parcher & Hayes, P.C., New York City, for defendant El Diario Associates; Jonathan Liebman, of counsel.

Sipser, Weinstock, Harper & Dorn, New York City, for defendant Newspaper and Mail Deliverers Union of New York and Vicinity; Jerome Tauber, of counsel.

O'Connor & Mangan, P.C., Long Island City, for defendant Douglas La Chance; J. Warren Mangan, of counsel.

## OPINION *AND ORDER*

WILLIAM C. CONNER, District Judge.

Plaintiffs Volmar Distributors, Inc. and Interboro Distributors, Inc. d/b/a/ Media Masters Distributors (collectively "Media") and REZ Associates ("REZ") bring this action against The New York Post Co., Inc. ("the Post"),[1] Maxwell Newspapers, Inc., publisher of *The Daily News* ("the News"),[2] El Diario Associates ("El Diario"), Pelham News Co., Inc. ("Pelham"), American Periodical Distributors, Inc. ("American"), Vincent Orlando ("Orlando"), The Newspaper and Mail Deliv-

---

1. The Post is currently in bankruptcy and, by virtue of the automatic stay provisions of the Bankruptcy Code, this action against it is stayed.

2. Plaintiffs have settled their claims against defendant Maxwell Newspapers Inc. and, in connection with that settlement, have dismissed this action against Maxwell.

erer's Union of New York and Vicinity ("NMDU"), and Douglas La Chance ("La Chance") to contest plaintiffs' termination as distributors of the Post, the News, and El Diario. Plaintiffs' Third Amended Complaint asserts violations of the Sherman Antitrust Act §§ 1 and 2, 15 U.S.C. §§ 1, 2; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* the New York State Donnelly Act, N.Y.Gen.Bus. Law § 340; and various state common laws. Plaintiffs seek damages in the amount of $6,000,000, trebled.[3]

## BACKGROUND

Plaintiffs are independent non-unionized newspaper distributors in the New York metropolitan area. American and Pelham are also non-unionized newspaper distributors in New York, and are owned and controlled by Orlando. The Post, the News, and El Diario are New York-based publishers of newspapers. NMDU is a labor union representing workers who distribute and deliver newspapers in the New York area, including workers employed by the Post, the News, and El Diario. La Chance is the former president of NMDU and allegedly has a beneficial interest in American and Pelham.

The gravamen of the Complaint is that Orlando and La Chance conspired to use La Chance's position at NMDU to expand the business of American and Pelham. Pursuant to this conspiracy, La Chance allegedly threatened labor unrest and offered labor concessions to induce the Post, the News, and El Diario to cut off plaintiffs from their distribution routes and transfer those routes to American and Pelham. The newspaper publishers advised plaintiffs that their terminations were either mandated by their collective bargaining agreement with NMDU, or

the result of an independent business decision.

On January 13, 1993, Defendants La Chance, Orlando, Pelham, and American were indicted by the Grand Jury of the County of New York in *People v. La Chance* (Indictment No. 0117–93). The indictment charges conspiracy to form a combination in restraint of trade and competition; combination in restraint of trade and competition; grand larceny by extortion, through threats of labor unrest and other harm against the Post; and coercion, by threats of labor unrest and other harm against the Post.[4] These charges arise from the same acquisition of newspaper distribution routes at issue in the instant civil case.

On November 20, 1992, NMDU was indicted by the Grand Jury of the County of New York, *People v. NMDU* (Indictment No. 11468–92), for enterprise corruption. The indictment charges that NMDU engaged in a pattern of criminal activity by participating in the affairs of "the Newspaper Delivery Mob." While the indictment covers a broader scope of conduct than that alleged in the instant Complaint, that scope includes NMDU's role in the events at issue in this civil case.

This action is presently before the Court on defendants' motion to stay civil discovery pending resolution of these two criminal matters now pending in the Supreme Court of the State of New York. For reasons discussed below, the motion to stay discovery is granted as to all defendants, but remains in effect only until resolution of *People v. La Chance.* After that criminal matter is complete, discovery will proceed as normal regardless of whether *People v. NMDU* has been resolved.

---

**3.** By order dated May 22, 1993, this Court dismissed plaintiffs' federal and state antitrust claims and common law claim for tortious interference with pre-contractual relations as pleaded in their Second Amended Complaint. *See Volmar Distributors, Inc. v. New York Post Co., Inc.,* 825 F.Supp. 1153 (S.D.N.Y.1993). On November 1, 1993 plaintiffs filed a Third Amended Complaint which repleads the antitrust claims. All references are to the Third Amended Complaint (the Complaint).

**4.** The original twenty-count indictment of January 13, 1993 included additional charges of coercion by threats of labor unrest, bribing a labor official, specific prohibited financial interests and transactions in violation of the Labor Law, and grand larceny by stealing property from El Diario. These charges were dropped in a twelve-count superseding indictment.

There are two other defendants named in the indictment: Richard Zeoli, a driver employed by the Post, and Andrew Gershowitz, secretary-treasurer of the NMDU under La Chance.

## DISCUSSION

It is well settled that district courts have the inherent power, in the exercise of discretion, to issue a stay when the interests of justice require such action. *E.g., Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986); *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980) (citing *United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970)); *SEC v. Downe,* No. 92–4092, 1993 WL 22126 at *12–13, 1993 U.S.Dist. LEXIS 753, at *45–46 (S.D.N.Y. Jan. 26, 1993) (citing *Landis v. North American Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)); *United States v. Certain Real Property and Premises,* 751 F.Supp. 1060, 1062 (E.D.N.Y. 1989); *Brock v. Tolkow,* 109 F.R.D. 116, 119 (E.D.N.Y.1985). Depending on the particular facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or impose protective orders. *Dresser Industries,* 628 F.2d at 1375.

When deciding whether to grant a stay, courts consider five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Arden Way Associates v. Boesky,* 660 F.Supp. 1494, 1497 (S.D.N.Y. 1987); *Twenty First Century Corp. v. LaBianca,* 801 F.Supp. 1007, 1010 (E.D.N.Y.1992).

Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice. The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter. *Dresser Industries,* 628 F.2d at 1375–76; *Tolkow,* 109 F.R.D. at 119; *see* Judge Milton Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 203 (S.D.N.Y.1989) (hereinafter *Parallel Proceedings*) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."). While the Constitution does not mandate a stay in such circum-

stances, *Dresser Industries,* 628 F.2d at 1375, denying a stay might undermine a defendant's Fifth Amendment privilege against self-incrimination. *Id.* at 1376; *Tolkow,* 109 F.R.D. at 121. Refusing to grant a stay might also expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure, expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case. *Dresser Industries,* 628 F.2d at 1376.

In the instant case every moving defendant, with the exception of El Diario, is currently facing criminal charges in New York Supreme Court involving essentially the same activity as alleged in the Complaint. Two of these defendants, Orlando and La Chance, have a Fifth Amendment privilege. A balancing of the relevant factors reveals that the interests of justice call for a stay of discovery as to Orlando and La Chance to preserve their Fifth Amendment rights. To avoid duplication of effort and waste of resources, discovery should also be stayed against the other defendants until the criminal matter pending against Orlando and La Chance is resolved.

### A. Stay as to Defendants Orlando and La Chance

Defendants Orlando and La Chance have a real and immediate interest in staying discovery, as there is an indictment currently pending against them which arises from the same factual background alleged in the Complaint. Proceeding with discovery would force these defendants into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit. On the one hand, if either Orlando or La Chance invokes his constitutional privilege during civil discovery, not only does this prevent him from adequately defending his position, but it may subject him to an adverse inference from his refusal to testify. *See Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify...."). On the

other hand, if either fails to invoke his Fifth Amendment privilege, he waives it, and any evidence adduced in the civil case can then be used against him in the criminal trial. *See Parallel Proceedings,* 129 F.R.D. at 205–06.

On the other side of the equation, plaintiffs have a strong interest in the expeditious resolution of the civil proceedings.[5]

In weighing these interests, the balance tips in favor of staying discovery as to Orlando and La Chance in order to preserve their Fifth Amendment rights.

Plaintiffs argue that if discovery is postponed, evidence may be lost due to "incarceration, death, or witness intimidation." This Court is not persuaded. On the contrary, due to the overlapping issues in the criminal and civil trials, the criminal justice system will help safeguard the evidence, and any resulting incarceration could only serve to insure the availability of the parties. And while stale memories pose a risk, speculation about death or witness intimidation is simply insufficient to overcome the real probability of substantial prejudice to Orlando and La Chance.[6]

This is not a case where a stay of discovery will cause immediate and serious harm to a compelling public interest.[7] *Compare Tolkow,* 109 F.R.D. at 120 (granted stay despite allegations of serious ERISA violations because no tangible public harm, i.e., no allegation that plan beneficiaries were not receiving benefits), *with Dresser,* 628 F.2d at 1377 (denied stay to avoid the "[d]issemination of false or misleading information by companies to members of the investing public"). The

public certainly has an interest in the preservation of the integrity of competitive markets. However, the pending criminal prosecution serves to advance those same interests. *Tolkow,* 109 F.R.D. at 121.

The Court appreciates that this stay will result in inconvenience and delay to plaintiffs. But under settled authority the Fifth Amendment is the more important consideration. *Vardi Trading Co. v. Overseas Diamond Corp.,* 1987 WL 17662 at *2, 1987 U.S.Dist. LEXIS 8580 at *5 (S.D.N.Y. Sept. 23, 1987); *Certain Real Property,* 751 F.Supp. at 1063; *Tolkow,* 109 F.R.D. at 121; *Dienstag v. Bronsen,* 49 F.R.D. 327, 329 (S.D.N.Y.1970). We note that plaintiffs retain the opportunity to move to vacate the stay if warranted by a change of circumstances. *Certain Real Property,* 751 F.Supp. at 1063; *Tolkow,* 109 F.R.D. at 121.

### B. Stay as to American, Pelham, NMDU, and El Diario

 American, Pelham, and NMDU are also facing criminal charges arising from the same factual underpinnings as the allegations in the Complaint. However, unlike Orlando and La Chance, these defendants do not have a Fifth Amendment privilege; American and Pelham are corporations, *Dreier v. United States,* 221 U.S. 394, 399–400, 31 S.Ct. 550, 550, 55 L.Ed. 784 (1911), and NMDU is a union, *Curcio v. United States,* 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225 (1957). Nor does El Diario, a partnership which is not facing any criminal charges, have the protection of the Fifth Amendment.

---

5. While the court is mindful of plaintiffs' interests, we note that plaintiffs have amended their complaint three times. After this Court dismissed the antitrust claims in plaintiffs' Second Amended Complaint, we granted leave for plaintiffs to replead these claims. This Third Amended Complaint was filed on November 1, 1993. Hence the progress of the civil case will be delayed by motions necessitated by plaintiffs' Third Amended Complaint.

6. Plaintiffs also suggest that postponing discovery might jeopardize their ability to collect any judgment they might obtain against defendants. We reject this speculative argument because even if defendants' resources are "scarce," plaintiffs have not demonstrated how forcing defendants

to litigate both the civil and criminal cases simultaneously would help plaintiffs.

7. This is particularly true in light of the facts of the instant case. The antitrust claims in plaintiffs' Second Amended Complaint were dismissed by this Court for failing to allege an "antitrust injury." As explained by the Court, plaintiffs failed to allege that the public—and not just the plaintiffs—were injured by defendants' conduct. That is, while plaintiffs alleged that they were terminated as distributors, they failed to plead facts that, if proven, would support a conclusion that their departure from the market had a competition-reducing effect. *Volmar,* 825 F.Supp. at 1159–61. Plaintiffs' Third Amended Complaint is an attempt to correct these pleadings.

*Bellis v. United States*, 417 U.S. 85, 93–95, 94 S.Ct. 2179, 2185–87, 40 L.Ed.2d 678 (1974).

These four defendants all make essentially the same argument in favor of a stay: that they cannot defend themselves in the instant civil case without the testimony of Orlando and La Chance and will suffer prejudice if Orlando and La Chance invoke the Fifth Amendment privilege during discovery and trial.

American and Pelham are concerned because Orlando controls both corporations and has been named by plaintiffs as the corporate representative they seek to depose. If Orlando chooses, as he has indicated, to invoke his Fifth Amendment privilege, American and Pelham contend they will have "little to offer in their own defense" and hence will be prejudiced by both the inability to defend themselves adequately and an adverse inference from Orlando's refusal to testify.

NMDU has similar concerns because La Chance is its former president. NMDU's new president and administration, none of whom played a role in the alleged improper conduct, fear prejudice if La Chance invokes his Fifth Amendment privilege.

El Diario argues that it cannot adequately defend itself against a racketeering conspiracy allegation while its co-conspirators are under indictment and remain protected by the Fifth Amendment.[8]

While the assistance of Orlando and La Chance may be vital to the other defendants, this Court's decision today to stay discovery as to Orlando and La Chance resolves these concerns. Defendants argue that Orlando and La Chance will invoke the Fifth Amendment during discovery and the trial, and that this will prejudice them at *trial.* But the stay of discovery as to Orlando and La Chance will effectively postpone the civil trial—for everyone—until resolution of the criminal matter. By the time the civil trial commences, the criminal proceedings against Orlando and La Chance will be resolved, their Fifth Amendment protection will have become less significant,[9] and the other defendants will not be forced to go to trial without their assistance. Thus, because of the stay granted in favor of Orlando and La Chance, there will be no prejudice to the other defendants in proceeding with discovery in normal fashion.

The only real issue is whether it is more efficient for the Court to grant a complete stay as to all defendants until *People v. La Chance* is resolved rather than a partial stay only as to Orlando and La Chance. Defendants argue that a complete stay would be beneficial to all parties. They contend that evidence presented at the criminal trial may obviate the need for document production and depositions, and would substantially reduce both plaintiffs' and defendants' litigation costs.

We find these considerations to be particularly applicable to the instant case. Orlando and La Chance are the central figures in this case with the central issue being whether these two men engineered a conspiracy. Because of the importance of their testimony, a partial stay may lead to duplicative depositions. That is, if only a partial stay is granted, once it is lifted plaintiffs will seek to depose Orlando and La Chance, and then may need to re-depose individuals in light of the critical testimony Orlando and La Chance are likely to give in their depositions. *See SEC v. Downe*, 1993 WL 22126 at *14, 1993 U.S.Dist. LEXIS 753 at *51 (S.D.N.Y. Jan. 26, 1993) (granted complete rather than partial stay because involved "central figure" and "partial stay would likely result in additional expenses for the parties without expediting the discovery process"). Moreover, the availability of transcripts and other evidence from the criminal trial may eliminate altogether the need for certain depositions.

---

**8.** El Diario was initially concerned because Mr. Victor Garrido, El Diario's Director of Circulation, was named in the original indictment. El Diario feared prejudice in having to defend itself without the assistance of Mr. Garrido. This argument is now moot because the charges against Mr. Garrido were dropped in the superseding indictment.

**9.** Their Fifth Amendment protection may not end with the resolution of the state proceedings, as Orlando and La Chance may be vulnerable to charges by the federal authorities. However, this possibility exists whether or not we grant a stay as to the other defendants.

*See Twenty First Century Corp.*, 801 F.Supp. at 1011 ("[T]he stay in this action may streamline later discovery since transcripts from the criminal case will be available to the civil parties."). Finally, the outcome of the criminal case may encourage settlement.

Although plaintiffs would prefer a partial over a complete stay so as to obtain discovery from at least some of the defendants, the civil trial will be postponed in either event. To avoid duplication of effort and unnecessary litigation costs, this Court, in the exercise of its discretion, grants a complete stay as to all defendants until the criminal proceedings now pending against La Chance and Orlando are resolved.

■ This stay will not, however, be extended through the resolution of *People v. NMDU.* That criminal proceeding involves only NMDU, who, as explained, will not be prejudiced at the civil proceedings once *People v. La Chance* is resolved, and the arguments in favor of convenience are not applicable.[10]

## CONCLUSION

For the foregoing reasons discovery is hereby stayed as to all defendants until the resolution of *People v. La Chance*, the criminal proceeding now pending in the Supreme Court of the State of New York (Indictment No. 0117–93).

**SO ORDERED.**

---

10. While this stay is in effect only until *People v. La Chance* is resolved and is unaffected by *People v. NMDU,* discovery as to NMDU is, of course, stayed along with the other defendants until the resolution of *People v. La Chance.*