Paul SIDARI et al., Plaintiffs,

v.

ORLEANS COUNTY et al., Defendants.

No. 95–250A.

United States District Court,
W.D. New York.

May 5, 1997.

Order Denying Reargument May 5, 1997.

Emmelyn Logan-Baldwin, Rochester, NY, for Plaintiff.

Robert Doren, Josephine Greco, Mark Uba, Buffalo, NY, for Defendant.

**Memorandum & Order**

SCOTT, United States Magistrate Judge.

This matter has been referred to this Court pursuant to 28 U.S.C. 636(b)(1)(A) and (B) by Order dated March 18, 1996.

Before the Court are the following motions:

1. Plaintiffs' motion to compel (Docket Item No. 140)

2. Plaintiffs' motion to shorten defendants' time to respond to May 28, 1996 document request (Docket Item No. 141)

3. Plaintiffs' motion to shorten defendants' time to respond to June 3, 1996 document request (Docket Item No. 143)

4. Plaintiffs' motion to shorten defendants' time to respond to June 14, 1996 document request (Docket Item No. 144)

5. Plaintiffs' motion to shorten defendants' time to respond to June 17, 1996 document request (Docket Item No. 145)

6. Plaintiffs' motion to extend discovery and to refer defense counsel's conduct to Grievance Committee (Docket Item No. 147)

7. Defendants' motion to stay the proceedings (Docket Item No. 150)

8. Plaintiffs' motion to compel discovery; extend time for discovery; refer defense counsel's conduct to Fourth Department Grievance Committee; and condition any stay on defendants paying plaintiff (Docket Item No. 157)[1]

## Background

Plaintiff, Paul L. Sidari,[2] is a white male Catholic of Italian ancestry who is employed as a corrections officer by Orleans County Sheriff's Department. Although not filed as a class action complaint, plaintiff purports to seek relief on behalf of himself "and other persons similarly situated" for the alleged violation of his (and presumably, their) civil rights.[3] Plaintiffs' Amended Complaint sets forth wide ranging allegations alleging discrimination based on race, sex, national origin, and religion.

In addition to money damages, plaintiffs' amended complaint sought injunctive relief restraining the defendants from "(1) maintaining a policy, practice, custom of discriminating against plaintiff and other persons similarly situated because of national origin, religion, race and/or retaliation for complaining of discrimination/retaliation or (2) abusing inmates because of their race and national origin." (See Amended Complaint at ¶ 13.) As it relates to himself, plaintiff's Amended Complaint alleges that he was discriminated against because of his Italian ancestry (Amended Complaint ¶¶ 27–30, 48, 54, 56, 57, 59, and 81). The sole allegation which appears to relate to plaintiff's religious discrimination claim is a statement by defendant Dingman to the effect that "We don't let Dagos and Catholics in the Masons; you'll have to go to the Knights of Columbus." (Amended Complaint ¶ 29). Plaintiffs' alle-

gations of racial discrimination relate to the alleged abuse of inmates. On August 26, 1996, the District Court adopted this Court's April 29, 1996 Order striking plaintiffs' allegations relating to the abuse of inmates and racial discrimination.

## Discussion
### Motion to Stay Civil Proceedings

On January 4, 1996, defendant John Walsh was indicted by the Grand Jury for allegedly assaulting Norvin Fowlks while Fowlks was an inmate at the Orleans County Jail. The allegations in the Indictment are similar to, if not based upon, the allegations set forth in Sidari's civil complaint in the instant matter. At the last appearance before this Court, counsel for the defendants advised the Court that the investigation into civil rights violations at the Orleans County Jail is continuing and that defendants Walsh and Dingman continue to be targets of that investigation. Defendants Green and Metz have also represented that they have been advised that they may be the subject of the criminal investigation. (See Affidavit of Brian J. Bergevin dated August 16, 1996 at ¶ 3.)

Thus, the defendants seek to have this civil action stayed pending resolution of the criminal proceedings.

 It is well-settled that a court has the discretionary authority to stay a case if the interests of justice so require. See *United ed States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970); *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) (citing *SEC v. Dresser Industries,* 628 F.2d 1368, 1375 (D.C.Cir.) (en banc), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980)) (holding that although "the Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings . . . a court

---

1. On October 18, 1995, plaintiff filed a motion to adjust the briefing schedule with respect to the defendants' motion to strike (Docket Item No. 67). That motion was adjourned *sine die* by Hon. Edmund F. Maxwell by order dated October 23, 1995. Although the briefing schedule was subsequently adjusted and the motion to strike has been adjudicated, plaintiffs' motion to adjust the briefing schedule was never terminated. Thus, plaintiffs' motion to adjust the briefing

schedule (Docket Item No. 67) is hereby dismissed as moot.

2. Plaintiff Chris Deen Sidari, Paul Sidari's wife, asserts derivative claims.

3. Notwithstanding such allegations, plaintiffs' counsel does not argue that plaintiff intended to file this action as a class action.

may decide in its discretion to stay civil proceedings"); *Volmar Distributors, Inc. v. The New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993). Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case. See *In re Par Pharmaceutical, Inc.*, 133 F.R.D. 12, 13 (S.D.N.Y.1990) (citing *Dresser*, 628 F.2d at 1376); *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y.1985). A stay of the civil case, however, is an extraordinary remedy. *In re Par Pharmaceutical*, 133 F.R.D. at 13.

■ There are numerous factors that should be considered in determining whether a stay is warranted, including: 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.[4]

*Overlap of Issues*

■ Defendants contend that the "commonality of issues arises out of the fact that the setting for the civil and criminal proceedings are the same, namely, the Correctional Division of the Orleans County Sheriff's Department." Defendants further argue that the criminal investigation of which defendants Walsh and Dingman are targets is very broad, "encompassing unknown violations of the civil rights of unknown persons who were at the Orleans County Jail during an undisclosed period of time." Thus, defendants argue, "because of the broad nature of the criminal investigation ... a response to even what may appear to be an innocuous question

may necessitate the exercise of the Fifth Amendment privilege."

Plaintiff does not argue that there is no overlap between the issues in this civil matter and the issues which are the subject of the criminal investigation involving Walsh and Dingman. Instead, plaintiffs assert that defendants' interests in not being forced to choose between asserting their Fifth Amendment rights or defending the civil action are insufficient to warrant a stay. Plaintiffs argue that it is not unconstitutional to force a litigant to choose between invoking his Fifth Amendment rights and risking adverse consequences in a civil action, or engaging in discovery in the civil case and risking conviction. See, e.g., *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *United States v. Rubinson*, 543 F.2d 951, 961 (2d Cir.), cert. denied, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976). However, as noted in *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1138, n. 4 (S.D.N.Y.1995), even if a court may constitutionally deny a request for a stay, a stay of a civil action may still be warranted in some instances.

The exact parameters of the criminal investigation are not known (except by those doing the investigation). At this time, the assault charge against defendant Walsh is the only charge that has been issued. Moreover, based upon the representations in the record, it appears that the investigation focuses solely upon the alleged civil rights violations stemming from the abuse of inmates at the Orleans County Jail. The parties have not contended that the criminal investigation is in any way concerned with plaintiff Sidari's treatment as an employee of Orleans County. Inasmuch as the plaintiffs' allegations relating to the abuse of inmates have been stricken from the complaint, it appears that the discovery in this case would be limited to the issues surrounding the plaintiff's claims that he has been discriminated against because of his national origin and/or religion. Plaintiffs'

---

4. *Volmar Distributors, Inc.*, 152 F.R.D. at 39 (citing *Arden Way Associates v. Boesky*, 660 F.Supp. 1494, 1497 (S.D.N.Y.1987)). Another factor often cited by courts in this Circuit, the interests of persons not party to the civil litigation is not applicable here and has not been raised by the parties.

stricken allegations regarding the violation of the civil rights of inmates or the abuse of inmates are not the appropriate subject of discovery in this proceeding.

Significantly, in response to the instant motion, the plaintiff does not argue that discovery into the inmate abuse allegations is necessary to prove the remaining claims in this action. The plaintiffs' complaint *does* include an allegation that the defendants have discriminated against those who have "complained of discrimination/retaliation or of having assisted in complaining of employment discrimination/retaliation." See Amended Complaint at ¶ 13(b). Even prior to the striking of certain allegations from the complaint, however, the Amended Complaint did not allege that the plaintiff was retaliated against because of any *specific* complaint *he* made regarding the abuse of inmates at the Orleans County facility. At paragraph 22 of the Amended Complaint, the plaintiff alleged—*upon information and belief*—that the abuse of inmate Fowlks was reported to defendant Green. Such an allegation infers that it was not the plaintiff who reported the abuse. In short, although the Amended Complaint is pled with significant detail exceeding the requirements of Rule 8 of the Federal Rules of Civil Procedure, the plaintiff does not allege a specific incident of inmate abuse which he reported to his superiors, or that he was retaliated against for having done so. Instead, plaintiff's allegations of retaliation are alleged to stem from his complaints of harassment for being Italian and/or Catholic (Amended Complaint at ¶¶ 16, 51), for associating with other employees not liked by the defendants (Amended Complaint at ¶¶ 26, 43, 47), for making suggestions regarding fire safety (Amended Complaint at ¶ 36), and for filing a complaint with the New York State Department of Human Rights (Amended Complaint at ¶¶ 66–67).

To the extent that complaints, if any, by the plaintiff regarding the abuse of inmates remain relevant to this proceeding, discovery into these matters might be appropriately limited to whether the plaintiff made any such complaint and whether or how the defendants retaliated against the plaintiff be-

cause of the complaint. Discovery into whether or not the alleged inmate abuse complained of by the plaintiff actually occurred would not necessarily be relevant to the instant proceedings.

In sum, in light of the fact that the plaintiffs' allegations regarding the abuse of inmates have been stricken from the complaint in this action, the remaining issues which may properly be the subject of discovery do not appear to significantly overlap with the issues under criminal investigation.

*Status of the Criminal Case*

A Superseding Indictment was returned by the Grand Jury on May 2, 1996 charging defendant Walsh with three counts of subjecting an inmate to cruel and unusual punishment in violation of 18 U.S.C. § 242. As of the time of oral argument, the parties represented that an ongoing investigation continues and that defendant Dingman has been identified as a "target" of the investigation as a potential co-conspirator with Walsh.

As of the date of this Order, although several months have passed, the Court has not been advised that any further charges were levied against defendant Walsh or that charges have been made against any other individuals involved in this matter. The criminal prosecution of defendant Walsh in continuing. The status of the investigation is uncertain.

*Balancing of Interests/Prejudice to the Parties*

The remaining factors require that the Court balance the plaintiffs' interest in proceeding with the civil litigation, the defendants' interest in staying the proceeding, as well as the interests of the Court and the public. The plaintiffs private interest in proceeding expeditiously cannot be ignored. The plaintiffs are, of course, concerned about the effect any continued delay may have on their ability to locate witnesses and the possible memory loss suffered by witnesses because of the passage of time. The Court and the public also have an interest in having this matter adjudicated in a timely and fair manner.

Upon consideration of these factors, it appears that inasmuch as the allegations relat-

ing to inmate abuse have been stricken, discovery with respect to substantially all of the remaining issues in this matter can proceed without jeopardizing the Fifth Amendment rights of the defendants.

To ensure that the discovery in this case proceeds smoothly, although it appears that discovery regarding the treatment of the Orleans County Jail inmates may no longer be material and relevant to this action, any such discovery contemplated by the plaintiff is stayed at this time. Discovery may proceed with respect to plaintiff's allegations that he was discriminated against because he was Italian and/or Catholic, and any of the other non-stricken allegations which do not involve the treatment of inmates. The Court strongly urges counsel to cooperate with each other with respect to the remaining discovery in this case. Attempts to unreasonably expand or restrict discovery in this matter which necessitate further motion practice are likely to lead to the imposition of sanctions.

Based on the above, defendants' motion to stay this action pending resolution of the criminal investigation is GRANTED IN PART AND DENIED IN PART. The stay of all discovery imposed in this case by the Court's June 25, 1996 Order is lifted and replaced by the limited stay discussed herein.

### Plaintiffs' Cross–Motion to Compel and For Other Relief

In response to the defendants' motion to stay the civil proceeding, the plaintiff filed a cross-motion (1) to compel discovery, (2) to extend the time for discovery, (3) to refer the defense counsel's conduct to the Fourth Department Grievance Committee, and (4) to condition any stay of discovery on the defendants' paying the plaintiff attorneys fees and costs for the 7 days of Saturday depositions taken in this case. (Docket Item No. 157).

This motion to compel by the plaintiff does not specify any specific discovery sought to be compelled, but appears to be a general request to continue discovery in this matter in opposition to the defendants' motion to stay discovery. To the extent that the mo-

tion seeks the continuation of discovery, for the reasons stated above in connection with the defendants' motion to stay, plaintiffs' motion to compel is GRANTED IN PART AND DENIED IN PART.

Because the Court has lifted the general stay of discovery in this matter, a scheduling conference will be held to set a new date for the completion of discovery. In this regard, plaintiffs' motion to extend the discovery deadline is GRANTED.

To the extent that the instant motion asks the Court to refer the defense counsel's conduct to the Fourth Department Grievance Committee, the motion is DENIED.[5] The plaintiffs' request to condition any stay of discovery on the defendants' paying the plaintiff attorneys fees and costs for the 7 days of Saturday depositions taken in this case, is also DENIED.

### Plaintiffs' Motions to Shorten Time to Respond

As noted above, the plaintiff has filed several motions to shorten the time in which the defendants may respond to plaintiffs' various document requests. See Docket Items Nos. 141, 143, 144, and 145. By order dated June 25, 1996, discovery in this matter was stayed pending the resolution of the defendants' motion to stay. Inasmuch as the stay in this matter is lifted, a new scheduling order will be entered addressing all outstanding discovery issues. Thus, these motions are DENIED AS MOOT.

### Plaintiffs' Motion to Extend Discovery and for Other Relief[6]

The plaintiff has filed a motion to extend discovery (Docket Item No. 147). As discussed above, because the Court has lifted the general stay of discovery in this matter, a scheduling conference will be held to set a new date for the completion of discovery. In this regard, plaintiffs' motion to extend the discovery deadline is GRANTED.

### Plaintiffs' Motion to Compel Disclosure of Personnel Files

The plaintiff filed a motion to compel the production of the personnel files of various

---

**5.** The plaintiff reiterated this request in a subsequent motion to (Docket Item No. 147). This subsequent request is also DENIED.

**6.** See footnote 5.

employees of the Orleans County Sheriff's Department, most of whom are non-parties to this action. (Docket Item No. 140). These files were the subject of a previous motion to compel filed by the plaintiff on December 19, 1995. That motion was denied without prejudice in this Court's April 29, 1996 Order wherein the Court stated:

> In the instant case, plaintiffs' motion papers fail to articulate a specific need for these files. Although § 50–a [of the New York Civil Rights Law] does not bar disclosure of such personnel records, the spirit and purpose of the statute are to be given some weight. Production of such documents containing intimately personal information about individuals, most of whom are not parties to this lawsuit, is warranted only when the party seeking the information articulates a specific need for the information.
>
> Therefore, the instant motion is denied without prejudice to the extent plaintiff seeks the personnel files. To facilitate the matter, any further motion by plaintiff seeking production of the personnel files, in the event plaintiff decides to make such a motion, shall be supported by a list of the individual's whose personnel files are requested *and a detailed description of the individual's relationship to this case, if any. Plaintiff shall also set forth a particularized statement of the specific information sought from each individual's personnel file and why that information is relevant to plaintiffs' claims in this action.*

The instant motion filed by the plaintiff seeks the production of the personnel files of 23 Sheriff's Department employees. Of those 23, only five are parties to this action. The Court directs that the personnel files of the five individuals who are named defendants in this action (David M. Green; Charles Dingman; John Walsh; Richard Metz; and Sue Emerson) be produced to the plaintiff subject to the following confidentiality requirements:

1. The documents and the information contained therein will not be disclosed to anyone persons other than the plaintiff, plaintiffs' counsel, and any expert retained by the plaintiff provided that the following procedure is followed:

 a). Such expert signs a sworn statement agreeing to be bound to these confidentiality terms; and

 b). The signed statement is filed with the Clerk of the Court and served upon all parties and, if the information to be disclosed includes the personnel files of any non-parties, upon the individuals whose personnel files are involved; and

 c). The parties, or the individual if a non-party, is afforded 10 days from the date of service of the signed statement to file an objection to the disclosure of the information to the expert. If any such objection is filed with the Court, the information is not to be disclosed to the expert until the objection is resolved.

2. The plaintiff, plaintiffs' counsel and any expert who is given access to the documents pursuant to the above, shall not discuss the information contained in the documents with any current or former employees of the Orleans County Sheriff's Department or others.

3. The documents and the information contained therein will be used solely for the purposes of this litigation and will not be utilized in any other legal proceedings.

4. The documents will be stamped "confidential" by the defendants prior to being produced to the plaintiff. No additional copies of these documents will be made by the plaintiff.

5. Upon conclusion of this matter, including any appeals, the documents shall be returned to the defendants.

Disclosure of the personnel files of the non-party individuals is a more difficult question. Rather than providing the Court with a particularized statement of the specific information sought from each individual's personnel file and why the sought after information is relevant to the case, the plaintiffs' instant motion merely sets forth a boilerplate statement for each of the individuals as follows:

> The information sought from the personnel file of ... are performance evaluations, pay records, discipline records, work histories, training and experience records,

transfer, promotion and/or demotion records, and review materials. As noted above, Sgt. Sidari is entitled to files of co-workers to establish his disparate treatment claims.

Although the plaintiff supplements this boilerplate with some individualized statement regarding each individual's relationship to the case, it is this Court's view that the plaintiff has not fully complied with the Court's direction in its April 29, 1996 Order which required the plaintiff to set forth a particularized statement of the specific information sought from each individual's personnel file, and why that information is relevant to plaintiffs' claims in this action. Further, as discussed below, the plaintiff has not demonstrated a specific need for the personnel files of many of the non-party employees.

**Merle Fredericks:** The plaintiff seeks Fredericks personnel file because Fredericks allegedly told the plaintiff he would investigate the plaintiff's complaints but did not keep an appointment with the plaintiff for the purpose of discussing the complaints. The plaintiff suggests that Fredericks was ordered not to undertake the investigation. The plaintiff does not say who issued such an order. The plaintiff suggests that Fredericks' personnel file is important to determine the presence or absence of information about plaintiff's complaints to defendant Green. However, the plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case. The plaintiff fails to articulate any reasonable basis to support the inference that information regarding plaintiff's complaints to defendant Green would properly be included in Fredericks' personnel file. The plaintiff has not articulated Fredericks' relationship to his disparate treatment claims.

**Christopher Bourke:** The plaintiff alleges that Christopher Bourke was present when Investigator Hill advised Christopher Bourke and Fredericks that Hill and defendant Green were investigating the plaintiff and an organization called the Sons of Italy. The plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case. Again, the plaintiff fails to articulate why information regarding this matter would properly be included in Christopher Bourke's personnel file. The plaintiff has not articulated Christopher Bourke's relationship to his disparate treatment claims.

**Timothy Bourke:** The plaintiff alleges that Bourke resigned his position as a corrections officer and dispatcher because of dissatisfaction with the conditions of the Orleans County Jail. The plaintiff further alleges that the plaintiff witnessed many incidents of discrimination against the plaintiff. Once again, the plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**Donald Stilwell:** The plaintiff alleges that Stilwell witnessed the discrimination against the plaintiff. The plaintiff further alleges that Stilwell was of Italian ancestry and that Stilwell was removed from his position after giving plaintiff a written statement regarding defendant Dingman. The defendants are directed to produce Stilwell's personnel file to the Court for an *in camera* review to determine whether or not disclosure is warranted.[7]

**John Mignano:** The plaintiff alleges that Mignano witnessed the discrimination against the plaintiff. Plaintiff alleges that Mignano has been similarly discriminated against by the defendants. At best, the plaintiff has articulated only that Mignano may be a witness on his behalf. The plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**Donald Burgio:** The plaintiff alleges that Burgio has been similarly discriminated against by the defendants. At best, the plaintiff has articulated only that Burgio may be a witness on his behalf. The plaintiff has failed to articulate a relationship between the information sought and the

---

**7.** See *Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988).

individual's connection to the case or to his disparate treatment claims.

**Kevin Kaderli:** The plaintiff claims that Kaderli was promoted to a lieutenant's position instead of the plaintiff. The plaintiff also alleges that he was "called in" for missing time clock punches but Kaderli was not challenged for this very same conduct. Finally, the plaintiff alleges that Kaderli complained about working with the plaintiff. The defendants are directed to produce Kaderli's personnel file to the Court for an *in camera* review to determine whether or not disclosure is warranted.

**Mark Parker:** The plaintiff claims that Parker advised the plaintiff that someone had put plaintiff's name on the computer as an inmate listing. The plaintiff also claims that Parker was one of the employees who was notified of and received flu shots while the plaintiff was not. The defendants are directed to produce Parker's personnel file to the Court for an *in camera* review to determine whether or not disclosure is warranted.

**Dan Smith:** The plaintiff alleges that Smith complained to his superiors about the ethnic slurs directed toward the plaintiff. At best, the plaintiff has articulated only that Smith may be a witness on his behalf. The plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**Jean Dingman:** The plaintiff claims that Jean Dingman placed a clipboard on defendant Dingman's desk for which the plaintiff was blamed. At best, the plaintiff has articulated only that Jean Dingman may be a witness on his behalf. The plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**William Breckinridge:** The plaintiff alleges that Breckinridge told defendant Metz that the plaintiff's allegations of discrimination are true. At best, the plaintiff has articulated only that Breckinridge may be a witness on his behalf. The plaintiff

has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**Michael Christopher:** The plaintiff alleges that Christopher was hired full time instead of Zina Baker, and that Baker was not hired full time because she was discriminated against. The plaintiff also alleges that Christopher was a witness to the clipboard incident. At best, the plaintiff has articulated only that Christopher may be a witness on his behalf. The plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**Francis Woodward:** The plaintiff claims that Woodward left work early and had coffee with defendants Dingman and Walsh. The plaintiff claims that he was falsely accused of leaving work early. The plaintiff further alleges that Woodward made a "sexual" phone call to plaintiff's wife. The plaintiff's allegations relate to his claim of disparate treatment. The defendants are directed to produce Parker's personnel file to the Court for an *in camera* review to determine whether or not disclosure is warranted.

**Zina Baker:** The plaintiff alleges Baker was the subject of discrimination because of her relationship with a black man and that plaintiff was accused of helping Baker by telling her that her name was "whited out" from the work schedule. The plaintiff's allegations may relate to his claims of retaliation. Thus, the defendants are directed to produce Parker's personnel file to the Court for an *in camera* review to determine whether or not disclosure is warranted.

**Elwin "Dutch" Scharlau:** According to the plaintiff, Scharlau complained to defendant Green about defendant Dingman's treatment of the plaintiff. At best, the plaintiff has articulated only that Scharlau may be a witness on his behalf. The plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**Beverly Taylor:** The plaintiff alleges that Taylor witnessed the "computer incident" and other acts of retaliation against the plaintiff. At best, the plaintiff has articulated only that Taylor may be a witness on his behalf. The plaintiff has failed to articulate a relationship between the information sought and the individual's connection to the case or to his disparate treatment claims.

**Mitchell Buddenhagen:** The plaintiff alleges that Buddenhagen was sent to training courses which the plaintiff was not allowed to attend. The plaintiff's allegations relate to his claim of disparate treatment. The defendants are directed to produce Parker's personnel file to the Court for an *in camera* review to determine whether or not disclosure is warranted.

**Robert Spriegel:** The plaintiff alleges that Spriegel received more training than the plaintiff and that Spriegel was at one time the Warden of the Orleans County Correctional Facility but was removed from that position by the defendants. The plaintiff's allegations may relate to his claim of disparate treatment. The defendants are directed to produce Parker's personnel file to the Court for an *in camera* review to determine whether or not disclosure is warranted.

In sum, the defendants are directed to produce the personnel files of defendants Green, Dingman, Walsh, Metz and Emerson subject to the confidentiality terms set forth above. The defendants shall produce the personnel files of Stilwell, Kaderli, Parker, Woodward, Baker, Buddenhagen and Spriegel to the Court for *in camera* review.

**Scheduling Conference**

In light of the lifting of the stay in this matter, a status/scheduling conference shall be held on **March 7, 1997 at 2:00pm** at 408 U.S. Courthouse, 68 Court Street, Buffalo, New York.

**Conclusion**

1. Defendants' motion to stay the proceedings (Docket Item No. 150) is GRANTED to the extent that discovery into matters involving inmate abuse is stayed, DENIED to the extent that it sought to stay discovery regarding plaintiffs' non-stricken allegations.

2. Plaintiffs' motion to compel (Docket Item No. 140) is GRANTED to the extent that the defendants are directed to produce the personnel files of defendants Green, Dingman, Walsh, Metz and Emerson subject to the confidentiality terms set forth above, and that the defendants shall produce the personnel files of Stilwell, Kaderli, Parker, Woodward, Baker, Buddenhagen and Spriegel to the court for *in camera* review.

3. Plaintiffs' motion to shorten defendants' time to respond to May 28, 1996 document request (Docket Item No. 141), Plaintiffs' motion to shorten defendants' time to respond to June 3, 1996 document request (Docket Item No. 143), Plaintiffs' motion to shorten defendants' time to respond to June 14, 1996 document request (Docket Item No. 144), and Plaintiffs' motion to shorten defendants' time to respond to June 17, 1996 document request (Docket Item No. 145) are DENIED AS MOOT.

4. Plaintiffs' motion to extend discovery and to refer defense counsel's conduct to the Grievance Committee (Docket Item No. 147) is GRANTED to the extent it seeks an extension of discovery and DENIED to the extent it seeks reference of defense counsel's conduct to the grievance committee.

5. Plaintiffs' motion to compel discovery; extend time for discovery; refer defense counsel's conduct to Fourth Department Grievance Committee; and to condition any stay on defendants paying plaintiff (Docket Item No. 157) is GRANTED to the extent that it seeks the continuation of discovery and an extension of the deadline for the completion of discovery, and DENIED to the extent that it seeks reference of defense counsel's conduct to Fourth · Department grievance committee; or to condition any stay on defendants paying plaintiff.

6. Plaintiffs' motion to adjust the briefing schedule (Docket Item No. 67) is MOOT.

SO ORDERED.

**Order**

Before the Court are plaintiff's motion to reargue, renew and/or amend, modify or

change this Court's February 13, 1997 Memorandum & Order (Docket Item No. 167); plaintiff's motion for a protective order (Docket Item No. 168); and Defendants Dingman, Emerson and Walsh's cross-motion for a protective order (Docket Item No. 170).

## Background

Plaintiff, Paul L. Sidari,[1] is a white male Catholic of Italian ancestry who is employed as a corrections officer by Orleans County Sheriff's Department. Although not filed as a class action complaint, plaintiff purports to seek relief on behalf of himself "and other persons similarly situated" for the alleged violation of his (and presumably, their) civil rights.[2] Plaintiffs' Amended Complaint sets forth wide ranging allegations alleging discrimination based on race, sex, national origin, and religion.

In a Memorandum & Order dated February 13, 1997, this Court lifted a general stay of this action and directed that discovery proceed except as to discovery relating to the treatment of inmates at the Orleans County Jail. The February 13, 1997 Order resolved seven other pending motions, including plaintiff's motion to compel disclosure of the personnel records of virtually every employee of the Orleans County Sheriff's Department. With respect to the personnel records, the Court directed that the records pertaining to the named defendants be produced directly to the plaintiff subject to a confidentiality order. With respect to certain non-party individuals, the Court directed that the personnel files be produced *in camera* for the Court to make a determination as to whether or not the records should be disclosed.

### 1. Motion to Reargue, Renew, Amend and/or Modify the February 13, 1997 Order

The plaintiff seeks review of this Court's February 13, 1997 Order to the extent that it directed that certain personnel files be produced *in camera* for a determination as to whether or not the records should be disclosed. Citing *King v. Conde*, 121 F.R.D.

180 (E.D.N.Y.1988), the plaintiff suggests that the Court erred in not directing that the files be produced directly to the plaintiff.

■ Contrary to plaintiff's argument, however, the *King* case does not preclude *in camera* inspection by the Court. Moreover, the King case concerned only the personnel files of the defendants named in that action, and thus avoided "the more vexing issues raised when records of other officers are sought in an attempt to prove the practice and policy of a municipal government." *King*, 121 F.R.D. at 185. As noted above, this Court's February 13, 1997 Order required the disclosure of the personnel files of the named defendants in this case, but directed that the personnel records of certain non-party officers be submitted for *in camera* review. This is within the Court's considerable discretion to supervise discovery.

■ The plaintiff also suggests that even though this lawsuit was not filed as a class action, he is entitled to class action discovery and relief. Although plaintiffs in Title VII cases are afforded broad discovery to allow them to attempt to prove the existence of an improper pattern and practice by an employer, the plaintiff greatly exaggerates the scope of the discovery to be afforded. In *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Supreme Court made it clear that the assertion of a Title VII claim does not allow the plaintiff the unfettered ability to wage an "across-the-board" attack on all unequal employment practices or discrimination by an employer. *Falcon* involved a cases where the plaintiff *did* seek certification of a class under Rule 23 of the Federal Rules of Civil Procedure. Notwithstanding the existence of a class actually *certified* by the district court, in *Falcon* the Supreme Court held that district court erred in allowing the plaintiff to maintain an "across-the-board" attack on all unequal employment practices allegedly followed by the employer pursuant to a policy of racial discrimination, stating:

---

1. Plaintiff Chris Deen Sidari, Paul Sidari's wife, asserts derivative claims.

2. Notwithstanding such allegations, plaintiffs' counsel does not argue that plaintiff intended to file this action as a class action.

The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." ... Title VII, however, contains no special authorization for class suits maintained by private parties. An individual litigant seeking to maintain a class action under Title VII must meet "the prerequisites of numerosity, commonality, typicality, and adequacy of representation" specified in Rule 23(a).... These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." ... We have repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." ... [T]he "careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable" and [the] "mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." ... [T]he allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified.

*Falcon,* 457 U.S. at 155–57, 102 S.Ct. 2364 (citations omitted).

Thus, the plaintiff in this case is entitled only to discovery as to whether he has been discriminated against because of his national origin (Italian) or religion (Catholic). Although the plaintiff may be afforded some latitude to determine a pattern or practice by his employer to discriminate against Italians or Catholics, the plaintiff can not conduct an across-the-board attack on any and all alleged unequal employment practices by his employer.

Based on the above, the plaintiff's motion to reargue, renew, and/or amend, modify or change the February 13, 1997 Order is DENIED in its entirety.

### 2. The Motions for Protective Orders

The plaintiff seeks a protective order directing that the depositions of the defendants proceed in a certain order, while defendants' Dingman, Walsh and Emerson seek to delay the depositions of Dingman and Green.

The plaintiff's counsel has frequently stated that Magistrate Judge Maxwell had issued an "order" establishing the sequence in which the defendants were to be deposed. (See Affirmation of Emmelyn Logan–Baldwin, Esq. dated March 14, 1997 at ¶¶ 11–14.) However, no such order exists. The plaintiff's counsel can point only to a September 18, 1995 letter from her to defense counsel "requesting" that the depositions take place in a certain order. (See Exhibit A to the March 14, 1997 Logan–Baldwin Affirmation.)

The defendants argue that because of the still pending criminal investigation of which Dingman, Walsh and Green are targets or potential targets, that the depositions of these individuals be conducted last to minimize any possibility that they may be prejudiced unintentionally waiving their Fifth Amendment privilege (by answering questions which the witness should have known could be used by the government's a link in the chain of evidence supporting a criminal conviction or additional criminal charges). (See Affidavit of Josephine A. Greco, Esq. dated March 21, 1997 at ¶ 10).

SO ORDERED.